IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KEYES, | ) |
| Plaintiff, | ) Civil Action No. 09 - 566 |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| v. | ) |
| TIMOTHY CHAMBERLIN, Unit 1 Manager; | ) |
| MELVIN LOCKETT, Superintendent, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff, Richard Keyes, a pro se prisoner incarcerated in the State Correctional Institution at Greensburg (SCI- Greensburg), brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his rights as protected by the Eighth Amendment and Fourteenth Amendments of the United States Constitution regarding his exposure to second hand smoke. On August 24, 2010, Plaintiff was released from SCI-Greensburg after completing his criminal sentence. Thus, his claim for injunctive relief has been rendered moot. For the reasons that follow, Plaintiff has failed to show a violation of his rights as protected by the Eighth and Fourteenth Amendments and, therefore, the Motion for Summary Judgment filed by Defendants will be granted.

A. Standard of Review

Pursuant to Fed. R. Civ. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and

---

1. In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999), Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Specifically, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." Simpson v. Kay Jewelers, Div. Of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). Moreover, the non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

B. Statement of Relevant Undisputed Facts[2]

Plaintiff, Richard Keyes, currently resides in Ashtabula, Ohio, after being released from the custody of the Pennsylvania Department of Corrections (DOC) on or about August 24, 2010. At all times relevant to this lawsuit, Mr. Keyes was an inmate in the custody of the DOC at the State Correctional Institution at Greensburg. Specifically, Mr. Keyes was housed at SCI-Greensburg from April 10, 2007, until the date of his release from DOC custody. Melvin Lockett was the Superintendent at SCI-Greensburg from January 28, 2007, until October 2, 2009. Timothy Chamberlain was employed by the DOC as a Unit Manager at SCI-Greensburg from April, 2008,

---

2. In support of the motion for summary judgment, Defendants filed a Concise Statement of Material Facts Not in Dispute (ECF No. 47). The Local Rules of the United States District Court for the Western District of Pennsylvania require that Plaintiff file a responsive "concise statement which responds to each numbered paragraph in the moving party's [statement of facts] by ... admitting or denying whether each fact contained [in the movant's statement of facts] ... is undisputed and/or material ... setting forth the basis for the denial if any fact ... is not admitted in its entirety, with appropriate reference to the record ..." See L.R. 56.1(C)(1)(a) & (b). Under our Local Rules, material facts set forth in a moving party's statement of facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." See L.R. 56.1(E). Plaintiff's response to Defendant's Motion does not contain any basis for any denial of a fact and also fails to reference the record for each such denial (ECF No. 53). Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Concise Statement of Material Facts Not in Dispute are admitted as true and correct.

until his retirement on July 23, 2010. During his entire tenure as a Unit Manager at SCI-Greensburg, Chamberlain was the Unit Manager for Unit 1, which consists of Buildings A and B.

Plaintiff was housed in Building B at SCI-Greensburg from January 7, 2009, until May 7, 2009. He was housed in Building A at SCI-Greensburg from May 7, 2009, until January 11, 2010, and from January 12, 2010, until June 16, 2010. His claims relate to the time he was housed in these units.

At all times relevant to this lawsuit, Buildings A and B were non-smoking units. Neither staff nor inmates were permitted to smoke in these units. Between September of 2008, and June 30, 2010, approximately 77 misconducts were issued to inmates for smoking at SCI-Greensburg. Many of the inmates cited received disciplinary custody time as a result. Superintendent Lockett expected his subordinates to enforce the no-smoking policy vigorously, and believes that SCI-Greensburg employees and staff did enforce the policy vigorously.

As the Unit Manager for Unit 1 at SCI-Greensburg, Chamberlain enforced the no-smoking policy vigorously. Chamberlain personally issued at least 10-15 misconducts to inmates for smoking on the unit during his time as Unit Manager at SCI-Greensburg. Chamberlain issued a misconduct every time he caught an inmate smoking. Chamberlain also adopted a zero-tolerance policy whereby he instructed the officers assigned to the unit to issue a misconduct every time they caught an inmate smoking, and to not give warnings.

Thus, officers assigned to Unit 1 issued a number of misconducts to inmates for smoking. In addition, Chamberlain made regular rounds to ensure that inmates were not smoking, and ensured that his officers did the same thing. Thus, although inmates were occasionally caught smoking in the institution's non-smoking housing units, including Unit 1, the issue of second-hand smoke was not a major concern on Unit 1 during the time that Keyes was housed there. There was not much

4

second-hand smoke on the Unit, or in any of the other non-smoking housing units, due to the concerted efforts of staff to enforce the no-smoking policy.

On at least one occasion, Keyes complained about how the smoking policy was being enforced. Chamberlain informed him that staff was enforcing the policy as strictly and strenuously as possible, and that inmates caught smoking were disciplined. Chamberlain also informed Mr. Keyes that if he provided him with the names of those violating the policy, he would take appropriate action. However, Mr. Keyes never provided Chamberlain with the name of any individual that was smoking on the unit. He also never told Chamberlain that his cellmate was smoking in his cell. Thus, Chamberlain never had knowledge of Mr. Keyes' cellmate smoking in his cell. Keyes filed a grievance concerning what he regarded to be the "frivolous" smoking policy. Chamberlain denied this grievance, chiefly because Keyes refused to cooperate with Chamberlain's attempts to identify the culprits and take corrective action. Keyes appealed the denial of the grievance. During the investigation of this grievance, Mr. Keyes refused to provide names of any inmates who were smoking on the unit. He also never told Superintendent Lockett that his cellmate was smoking in his cell. Thus, Superintendent Lockett never had knowledge of Mr. Keyes' cellmate smoking in his cell.

Due to the general lack of significant levels of second-hand smoke on the unit, and also due to Mr. Keyes' refusal to cooperate with my attempts to investigate his concerns, neither Chamberlain nor Lockett ever believed that Mr. Keyes was subjected to a substantial risk of serious harm as a result of second-hand smoke. Chamberlain continued to enforce the no-smoking policy vigorously until the date of his retirement.

### C. Plaintiff's Claim

Plaintiff's claim in this suit is that his exposure in prison to second-hand smoke, known as environmental tobacco smoke (ETS), constituted "cruel and unusual punishment" as violative of the

5

Eighth Amendment. In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

ETS claims come in two varieties - present injury claims and future injury claims - and are measured by different standards. Atkinson v. Taylor, 316 F.3d 257, 273 (3d Cir. 2003) (Ambro J. dissenting). A present injury claim alleges that exposure to ETS poses a risk to a prisoner's existing medical needs. It is a standard condition-of-confinement claim governed by the principles the Supreme Court established in Estelle and Farmer (discussed below). Thus, a prisoner must allege a sufficiently serious medical need (the objective component) and deliberate indifference by prison officials in response (the subjective component). *Id*. A future injury claim alleges that an inmate's ETS exposure is creating a risk of future medical harm so grave that society will not condone its prisoners (or anyone else) being exposed to it. *Id*. (citing Helling v. McKinney, 509 U.S. 25, 36 (1994)). Plaintiff's claim is best categorized as one alleging "present injury," given that he primarily seeks compensatory damages and that his request for injunctive relief was rendered moot upon his release from prison.

A present injury claim based on exposure to ETS requires proof of: 1) a sufficiently serious medical need related to ETS exposure; 2) deliberate indifference by the prison authorities to that

need. Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). The undisputed facts clearly show that neither Defendant was deliberately indifferent with respect to ETS exposure at SCI-Greensburg.

Deliberate indifference describes a state of mind more blameworthy than negligence," but "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the

7

> lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

The Supreme Court further explained the deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Thus, in Farmer, the Supreme Court rejected an objective test for deliberate indifference. Instead, the Court adopted a subjective test that requires an inquiry into what the prison official

actually knew rather than what a reasonable official in his position should have known. Consequently, to defeat summary judgment, a plaintiff must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm. Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 846).

In the instant action, Defendants provided evidence showing the existence of an institutional smoking policy dating from March 1, 2006 (ECF No. 47-1, pp. 14-15). This policy prohibits inmate smoking inside any DOC building and restricts staff smoking to only areas designated as such. Defendants also furnished evidence demonstrating citations for violation of the policy and penalties for infractions. These responses by prison authorities, indicating attentiveness to the policy and awareness of and disciplining of violators show that Defendants did not act with deliberate indifference. *Accord* Slaughter v. Rogers Civil No. 10-2911, 2010 WL 4016981, 2 (3d Cir. Oct. 14, 2010) (holding that adult treatment center staff and administrators were not deliberately indifferent towards inmate's health and safety by failing to correct allegedly rampant smoking by inmates and staff, where center had a smoking policy addressing risks posed to nonsmokers, center issued citations for violations of the policy, and center responded to inmate's complaints and disciplined violators); Panton v. Nash, 317 Fed. App'x 257 (3d Cir. 2009) (holding that warden was not deliberately indifferent to federal inmate's exposure to second-hand environmental tobacco smoke where warden set out clear smoking regulations at prison, made efforts to enforce that smoking policy and inmate failed to demonstrate excessive ETS exposure).

Plaintiff's failure to show deliberate indifference with regard to ETS exposure entitles Defendants to judgment as a matter of law. Consequently, their motion for summary judgment will be granted. An appropriate order follows.

**AND NOW**, this 13th day of January, 2011;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 46) is **GRANTED**.

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Richard Keyes
5313 Nathan Avenue
Ashtabula, OH 44004